IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | § | |
| VS. | § | NO. 4:10-CV-573-A |
| CONSOLIDATED METROPLEX CONSTRUCTION SERVICES, L.L.C., ET AL., | § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion for summary judgment of plaintiff, Washington International Insurance Company. Defendants, Consolidated Metroplex Construction Services, L.L.C. ("Consolidated"), Kevin Patterson ("Kevin"), and Paula Patterson ("Paula"), filed nothing in response to the motion.[1] Having considered the motion, the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

---

[1] Plaintiff in the motion refers to itself as "Surety," to Consolidated as "Principal," and to Consolidated, Kevin, and Paula collectively as "Indemnitors." The court will refer to the parties as they are named in the pleadings.

I.

Plaintiff's Claims and the Basis of Its Motion

Plaintiff initiated this action by the filing on August 13, 2010, of its original complaint, bringing claims and causes of action against all defendants for breach of contract, specifically, breach of the parties' indemnity agreement.[2]

Plaintiff contends that it is entitled to summary judgment because the terms of the indemnity agreement obligate defendants to indemnify it against losses and expenses paid under a performance bond.

II.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

Consolidated is a commercial construction contractor organized as a limited liability company, with Paula and Kevin as its members. On January 23, 2007, Consolidated entered into a Subcontract Agreement with RBR Construction, Inc. ("RBR"), in the amount of $1,093,494.00, for the performance by Consolidated of subcontracting work on a project located in Kingman, Arizona.

---

[2]Plaintiff filed its first amended complaint on August 31, 2010, solely to clarify the jurisdictional allegations.

The Subcontract Agreement required Consolidated to obtain performance and payment bonds in the amount of the agreement.

On or about February 15, 2007, plaintiff and defendants entered into a General Indemnity Agreement ("Indemnity Agreement"), whereby plaintiff agreed to issue surety bonds on behalf of defendants, identified in the Indemnity Agreement as "Indemnitors." Under pertinent portions of the Indemnity Agreement, defendants agreed to

> exonerate, hold harmless, and indemnify [plaintiff] from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which [plaintiff] may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

Pl.'s App. at 112. The Indemnity Agreement also gave to plaintiff the

> exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against [plaintiff] or [defendants] . . . shall or shall not be paid, compromised, resisted, defended, tried or appealed . . . .

Id. at 113. The Indemnity Agreement provided that plaintiff's decision, if made in good faith, was binding on the defendants.

3

At defendants' request, Consolidated, as principal, and plaintiff, as surety, on February 27, 2007, executed and issued a Subcontract Performance Bond ("Performance Bond") numbered S-904-0698, in the sum of $1,093,494.00, in connection with the project in Arizona. Id. at 124. RBR was named as obligee.

On or about August 6, 2008, RBR presented to one of plaintiff's independent agents a claim letter under the Performance Bond in the amount of $226,782.04. On or about October 7, 2008, an attorney for RBR presented to plaintiff and Consolidated a revised claim under the Performance Bond in the amount of $545,524.48. In a letter to plaintiff dated December 5, 2008, counsel for Consolidated expressed her client's belief that the actual amount of damages due RBR was approximately $192,700.00.

Apparently after receiving no response to its demands, RBR on December 2, 2008, sued plaintiff and Consolidated in the state district court of Tarrant County. RBR brought claims and causes of action against Consolidated for breach of the Subcontract Agreement, and against plaintiff under the Performance Bond. RBR sought as damages the amount of $545,524.48, plus interest and attorney's fees.

Plaintiff engaged counsel to represent it in the investigation of RBR's claims and to defend it in the state court

action.[3] As part of the investigation into the claims, plaintiff's counsel retained a construction consulting firm, reviewed documents concerning the claims, met with Consolidated's representatives to discuss the basis of the claims, engaged in discovery, including attending Kevin's deposition and defending the deposition of plaintiff's representative, and otherwise actively defended plaintiff in the state court action.

Plaintiff, Consolidated, and RBR eventually agreed to settle the state court action. As part of the settlement, at Consolidated's request, plaintiff agreed to pay RBR $200,000 under the Performance Bond, and in return, RBR agreed to dismiss with prejudice all claims against plaintiff in the state court action and to assign its claims against Consolidated to plaintiff. RBR also agreed to dismiss its claims against Consolidated, conditioned upon plaintiff's payment of the $200,000 and on Consolidated's release of any claims against RBR. Plaintiff paid the $200,000 to RBR on or about January 7, 2010, and, on January 13, 2010, RBR signed a release and assignment of claims, dismissing its state court claims as to plaintiff and assigning to plaintiff RBR's claims against Consolidated. In February 2010, RBR and Consolidated entered into a compromise settlement agreement whereby each released its claims against the

---

[3]Consolidated was represented in the state court action by its current counsel of record.

5

other. RBR's release of claims against Consolidated was expressly contingent on the payment by plaintiff of the $200,000 settlement amount.

Plaintiff on July 23, 2010, made a demand to defendants for indemnity or reimbursement pursuant to the Indemnity Agreement. The amount demanded included the $200,000 paid to settle the state court action, plus $14,426.56 in costs and fees. Defendants failed to respond to plaintiff's demand, and the instant litigation followed.[4]

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as

---

[4] The summary judgment record contains evidence that plaintiff has incurred $11,180.76 in additional expenses, for a total amount of damages of $225,607.32.

6

to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

A motion for summary judgment cannot, of course, be granted simply because there is no opposition. Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, however, the court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when those facts establish a prima facie showing of entitlement to judgment. See Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

IV.

Analysis

To prevail on its claim for breach of the indemnification agreement, plaintiff must establish the following: (1) a contractual indemnity agreement between it and the defendants; (2) the agreement obligated defendants to indemnify plaintiff in

the event claims were made on the bonds issued by plaintiff; (3) claims were made on the bonds; (4) all conditions precedent for recovery have occurred, or have been performed, waived, or excused; and, (5) plaintiff has incurred damages. Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 719 (5th Cir. 1995).

The court is satisfied that the summary judgment evidence, from which the undisputed facts set forth in section III, supra, are derived, conclusively establishes each element of plaintiff's claim, and finds no need to reiterate evidence in support of each element here. None of the summary judgment evidence has been in any way controverted by defendants, nor have defendants made any attempt to raise any question of fact as to any element required to be established by plaintiff. Defendants have neither pleaded nor adduced evidence of any defense to enforcement by plaintiff of the Indemnity Agreement. Old Republic Sur. Co. v. Palmer, 5 S.W.3d 357, 362 (Tex. App.-- Texarkana 1999, no pet.); Ford v. Aetna Ins. Co., 394 S.W.2d 693, 698 (Tex. Civ. App.--Corpus Christi 1965, writ ref'd n.r.e).

Plaintiff is thus entitled to recover from defendants damages in the amount of $225,607.32, plus pre-judgment interest in the amount of $5,874.00, for a total amount of damages of $231,481.32, plus post-judgment interest at the rate of rate of 0.24 percent per annum thereon.

V.

ORDER

Therefore,

The court ORDERS that plaintiff's motion for summary judgment be, and is hereby, granted, and that plaintiff have and recover from defendants, jointly and severally, the amount of $231,481.32, plus interest thereon at the rate of 0.24 % per annum, compounded annually, from the date this judgment is signed until the balance is paid.

SIGNED May 3, 2011.

/s/ John McBryde
JOHN McBRYDE
United States District Judge